UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
REVONN A. JONES,
               Plaintiff,

v.

KARL VOLIMER, Warden WCDOC; DR.
RAUL ULLOA, CD-MD; VERONICA
O'MALLEY-TULLY, Nurse,
               Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

17 CV 5675 (VB)

Briccetti, J.:

    Plaintiff Revonn A. Jones, proceeding pro se and in forma pauperis, brings this Section 1983 action against defendants Assistant Warden Karl Vollmer, Dr. Raul Ulloa, and Nurse Veronica O'Meally-Tully,[1] alleging they were deliberately indifferent to plaintiff's serious medical needs.

    Before the Court is the unopposed motion of defendants Correct Care Solutions,[2] O'Mealley-Tully, and Ulloa (the "moving defendants") to dismiss the complaint pursuant to Rule 12(b)(6). (Doc. #11).

    For the reasons set forth below, the moving defendants' motion is GRANTED, and the claims against the moving defendants as well as the claims against the remaining defendants are dismissed.

---

[1]     Defendants Vollmer and O'Meally-Tully are incorrectly sued herein as Karl Volimer, and Veronica O'Malley-Tully.

[2]     Plaintiff did not include Correct Care Solutions in the caption of his complaint, nor was Correct Care Solutions served with a summons and complaint in this matter. Nevertheless, the motion to dismiss submitted to the Court is on behalf of Correct Care Solutions as well as named plaintiffs O'Meally-Tully and Ulloa.

1

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

In deciding the pending motion, the Court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as set forth below.

At all times relevant to the complaint, plaintiff was a post-conviction inmate at the Westchester County Jail in Valhalla, New York.

Plaintiff asserts defendant Warden Vollmer, the chief executive officer of the Westchester County Department of Correction ("WCDOC"), was aware of the medical issues that give rise to this case through plaintiff's grievances. Defendant Dr. Ulloa is "responsible for the medical department" of Correct Care Solutions, the provider of medical services at Westchester County Jail. (Compl. ¶ 29). Defendant Nurse O'Meally-Tully is a nurse at Westchester County Jail.

On October 27, 2015, as part of intake procedures at the Westchester County Jail, plaintiff was given a tuberculosis test ("PPD"). Three days later, on October 30, 2015, plaintiff's PPD returned a negative result and plaintiff was placed in general population housing.

On December 30, 2015, plaintiff was tested for tuberculosis a second time. On January 1, 2016, defendant Nurse O'Meally-Tully told plaintiff he had tested positive for tuberculosis.

On January 2, 2016, two New York State Department of Health ("NYSDOH") employees took an official reading of plaintiff's PPD, which were 14 mm and 13 mm. NYSDOH ordered WCDOC to x-ray plaintiff's chest.

Plaintiff was taken to Westchester County Medical Center for a "series of test[s]." (Compl. ¶ 11). Before he was discharged, plaintiff was informed "he would be required to be

treated for latent tuberculosis." (Id. ¶ 12). Plaintiff was told he would begin immediate treatment with Isoniazid and Pyridovine (vitamin B6).[3]

Upon plaintiff's return to the Westchester County Jail, Sergeant Watson ordered plaintiff to return to his previous unit in general population housing, as Watson had no knowledge of plaintiff's medical information or PPD result.

On January 3, 2016, plaintiff went to the "GPH" clinic, where Nurse O'Meally-Tully provided detailed information about plaintiff's tuberculosis treatment. (Compl. ¶ 14). She told plaintiff he would be taking Isoniazid and Pyridovine for six months. She also explained the potential risks of liver damage as a result of these medications and reminded plaintiff to drink water to prevent such damage. O'Meally-Tully also told plaintiff he would have to undergo periodic blood tests to monitor the effect of these medications on his liver. Plaintiff then returned to his assigned housing unit.

Upon returning to his housing unit, plaintiff alleges he immediately was ordered to return to the clinic. At the clinic, plaintiff was told he would not be given his prescribed medications until he underwent further blood tests. Plaintiff objected to additional testing, asserting he had already undergone multiple tests at Westchester County Medical Center. Plaintiff said he wanted to start the medication, but his request was denied. It is unclear from the complaint whether plaintiff submitted to a blood test during this January 3, 2016, visit to the clinic.

On January 10, 2016, plaintiff returned to the GPH clinic for more blood tests.

---

[3] Plaintiff refers to the second prescribed medication both as "Pyridovine" (Compl. ¶ 14) and Pyroxione. (Compl. ¶ 12).

On or around January 17, 2016,[4] Nurse O'Meally-Tully told plaintiff he did not require "any additional care" for tuberculosis. (Compl. ¶ 17). This caused plaintiff and Nurse O'Meally-Tully to have a "heated argument." (Id.). As a result, O'Meally-Tully called defendant Dr. Ulloa. Dr. Ulloa told O'Meally-Tully that plaintiff's case would be referred to Dr. Jacuette, a doctor with NYSDOH, to determine whether treatment should be initiated.

On January 31, 2016, O'Meally-Tully told plaintiff he would begin treatment for tuberculosis for six months beginning February 1, 2016. Plaintiff began treatment on February 1, 2016.

Plaintiff asserts the failure to provide his prescribed medications between January 3 and January 31, 2016, constituted deliberate indifference to plaintiff's serious medical need and amounted to "intentional malpractice." (Compl. ¶ 21).

## DISCUSSION

I. Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

---

[4] The complaint is unclear whether this discussion took place on January 7, 2016, or January 17, 2016. Plaintiff states "he was informed one week [after January 10, 2016] that he did not require any additional care. . . . which occurred on January 7, 2016." (Compl. ¶ 17).

4

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II. Application

Moving defendants assert plaintiff received adequate, timely treatment.

The Court agrees.

To succeed on a claim for constitutionally inadequate medical care under the Eighth Amendment's ban on cruel and unusual punishment, a prisoner must plausibly allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This test has both an objective and a subjective component: plaintiff must establish (i) the alleged deprivation of medical care is "sufficiently

5

serious," and (ii) the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

    A.    <u>Objective Prong</u>

Accepting the allegations of the complaint as true, plaintiff received adequate medical care in light of his inconclusive tuberculosis test results.

The objective component of an Eighth Amendment inadequate medical care claim has two subparts. "The first inquiry is whether the prisoner was actually deprived of adequate medical care," keeping in mind that only "reasonable care" is required. Salahuddin v. Goord, 467 F.3d at 279 (citing Farmer v. Brennan, 511 U.S. 825, 844–47 (1970)). "[P]rison officials who act reasonably in response to an inmate-health risk cannot be found liable under the Cruel and Unusual Punishments Clause." Salahuddin v. Goord, 467 F.3d. at 279–80 (citing Farmer v. Brennan, 511 U.S. at 845) (alterations omitted).

"Second, the objective test asks whether the inadequacy in medical care is sufficiently serious" by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Salahuddin v. Goord, 467 F.3d at 280 (citing Helling v. McKinney, 509 U.S. 25, 32–33 (1993)).

In determining whether an alleged injury is a "serious" medical condition, "factors that have been considered include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059–60 (9th Cir. 1992)). In cases challenging the adequacy of the medical treatment given, "the seriousness inquiry is narrower. For example, if the prisoner is

receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" Salahuddin v. Goord, 467 F.3d at 280 (quoting Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003)) (alterations omitted).

Here, plaintiff received reasonable care. Generally, an inmate who tests positive for tuberculosis on a PPD is given a chest x-ray to determine whether the inmate has active tuberculosis. See Odom v. Sielaff, 1995 WL 625786, at *1 n.2 (E.D.N.Y. Oct. 12, 1995).[5] If active tuberculosis is not shown by the x-ray, the inmate is encouraged to take preventative medication in the form of Isoniazid, but the medication is not mandatory. Id. Typically, an inmate who does not have signs of active tuberculosis is allowed to return to general population housing. Id. Consistent with this general procedure, as alleged in the complaint, plaintiff was diagnosed with "latent tuberculosis" after a positive PPD test and a chest x-ray. (Compl. ¶ 12). Plaintiff himself pleads the prescribed Isoniazid and Pyroxione were "prophylactic." (Compl. ¶ 21). Therefore, the treatment plaintiff received was consistent with the standard treatment to prevent latent tuberculosis from becoming active.

Moreover, plaintiff alleges no harm resulting from the purported one-month delay in receiving treatment. Plaintiff does not allege he suffered an adverse effect on his daily activities nor any pain between January 2 and January 31, 2016, while awaiting treatment. Therefore, plaintiff has not plausibly alleged any deficiency in care was sufficiently serious.

---

[5] Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Accordingly, because plaintiff has failed to satisfy the objective prong of an Eighth Amendment deliberate indifference claim, his federal claim must be dismissed.

III. Remaining Defendants

In addition to naming defendants Vollmer, Ulloa, and O'Meally-Tully in the caption of the complaint, a liberal reading of the complaint suggests plaintiff also intended to sue WCDOC and Correct Care Solutions. (Comp. ¶ 2).

    A.     Westchester County Department of Correction

WCDOC is an administrative arm of the County of Westchester. As such, it does "not have a legal identity separate and apart from the municipality, and cannot sue or be sued." Carroll v. City of Mount Vernon, 707 F. Supp. 2d 449, 450 n.2 (S.D.N.Y. 2010) (citing Warner v. Village of Goshen Police Dep't, 256 F. Supp. 2d 171, 175–76 (S.D.N.Y. 2003)); see also Solis v. Cnty. of Westchester, 1995 WL 14072, at *1 (S.D.N.Y. Jan. 10, 1995) (holding that the WCDOC is not a legal entity and that the County of Westchester is the real party-in-interest). Plaintiff's claims against WCDOC must therefore be dismissed.

In light of plaintiff's pro se status, the Court construes the complaint as asserting claims against the County of Westchester.

"Local governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employees' actions." Connick v. Thompson, 563 U.S. 51, 60 (2011) (internal quotation marks and citations omitted); Gleason v. Scoppetta, 566 F. App'x 65, 70 (2d Cir. 2014) (summary order). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity

8

is responsible under § 1983." Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 694 (1978).

Plaintiff neither asserts a Monell claim nor identifies any policies or customs of Westchester County that give rise to a constitutional claim.

Accordingly, to the extent plaintiff asserts claims against WCDOC and Westchester County, those claims must be dismissed.

B.  Karl Vollmer

Plaintiff asserts a supervisory claim against Warden Vollmer. Plaintiff alleges Vollmer was "made aware [of the events giving rise to this claim] through Mr. Jones['s] administrative remedies of the serious medical issues . . . and did nothing to assist in the remedy of Mr. Jones's health. Warden [Vollmer] supervised those who were responsible to immediately administer medications and treatments of which did not occur." (Compl. ¶ 28).

"[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013). Supervisory liability can be premised on allegations that "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong" or "the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Here, plaintiff alleges Warden Vollmer was informed of his grievance but did nothing to remedy plaintiff's medical care. However, the claim against Vollmer fails because, as explained above, plaintiff's medical treatment did not violate his constitutional rights. Warden Vollmer cannot be held liable for failing to remedy a constitutional violation that did not occur. See

Ramos v. Artuz, 2003 WL 342347, at *11 (S.D.N.Y. Feb. 14, 2003) ("[P]laintiff's claim of supervisory liability cannot survive here because . . . there was no constitutional violation.").

Accordingly, plaintiff's claim against Warden Vollmer must be dismissed.[6]

IV. Leave to Amend

The Court should freely grant leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a). Moreover, when a pro se plaintiff fails to state a cause of action, the Court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks and citation omitted).

Here, plaintiff could only cure the defects in his complaint if his diagnosis and treatment were entirely different than he has alleged. The Court sees no indication plaintiff could state a valid Eighth Amendment claim based on a month-long delay in receiving discretionary preventative medication.

Accordingly, leave to amend would be futile.

V. State Law Claims

In addition to the Eighth Amendment claim, the complaint, liberally construed, asserts claims under state law for negligence and medical malpractice.

Having dismissed plaintiff's federal claim, there is no longer any claim over which the Court has original jurisdiction. In an exercise of its discretion, the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims. See 28 U.S.C. § 1367(c)(3).

---

[6] Warden Vollmer answered plaintiff's complaint on October 10, 2017. (Doc. #10). Nevertheless, because the Court has determined there was no constitutional violation for which he can be responsible, the Court sua sponte dismisses the complaint against Vollmer.

Accordingly, the state law claims are dismissed.

## CONCLUSION

The moving defendants' motion to dismiss is GRANTED, and the claims against the moving defendants as well as the claims against the remaining defendants are dismissed.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion (Doc. #11) and close this case.

Dated: May 29, 2018
       White Plains, NY

                            SO ORDERED:

                            _____
                            Vincent L. Briccetti
                            United States District Judge